[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-12483

Non-Argument Calendar

_____

BENEDICT MOHIT,

Plaintiff-Appellant,

*versus*

MORRIS WEST,
Individual Capacity; Mayor of Haines City, A
Municipal Corporation in the State of Florida,
ANNE HUFFMAN,
Individual Capacity; Vice Mayor of Haines City,
HORACE WEST,
Individual Capacity; Commissioner of Haines City,
JAYNE HALL,
Individual Capacity; Commissioner of Haines City,
ROY TYLER,

2                    Opinion of the Court                  21-12483

Individual Capacity; Commissioner of Haines City, et al.,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:20-cv-00813-VMC-SPF

_____

Before GRANT, LUCK, and BRASHER, Circuit Judges.

PER CURIAM:

Benedict Mohit sued officials of Haines City in their individual capacities under 42 U.S.C. section 1983 because they required him to obtain permits to conduct farming operations on his residentially zoned property. The district court dismissed Mohit's regulatory takings, substantive due process, and equal protection claims for failure to state a claim. We affirm.[1]

---

[1] Mohit also claimed that the City officials were barred from charging him an assessment or fee for stormwater management for his farm. Because Mohit makes no argument about this claim on appeal, we do not discuss it further.

## FACTUAL BACKGROUND

Mohit was born in the Caribbean, has dark skin color, speaks with a foreign accent, and is a naturalized United States citizen.

Mohit bought a residentially zoned abandoned farm in Haines City and, in compliance with state agricultural regulations, used the property to establish a commercial hay crop and to raise horses. Haines City then adopted an ordinance that prohibited keeping farm animals in the City and that required a conditional use permit to use residentially zoned property for agricultural purposes.

Mohit met with Haines City Development Services Director Richard Greenwood and Deputy Director Mark Bennett to discuss changing his hay crop and horse operations to other livestock operations, and they threatened to shut down his farm for violating the ordinance. They also threatened to impose fines and get a lien on his farm if he continued to operate it without a permit. Before Mohit applied for a permit, Deputy Director Bennett told him to "list only a few animals" on his application to improve the odds for "a person like him" to get approved.

Mohit believed that the City's permit requirement conflicted with state agricultural statutes, but he applied for a permit to maintain his hay crop and to keep twenty cows, twenty goats, and five horses on his property. The City approved his application in full and required him to apply to renew the permit in ten years.

Mohit wanted to do more on his farm. For example, he wanted to expand to twenty-five pregnant cows and ten horses; to keep bees and poultry; to conduct sod, dairy, fish, and forestry operations; to cultivate fruits and vegetables; to build a barn for his cows, a stable for his horses, a coop for his chickens, a greenhouse for his vegetables, and a storage building for fertilizer and other equipment; to keep, store, and repair tractors and farm equipment; and to put up barbed wire fencing.

Mohit alleges that his neighbor, Miguel Grullon, was treated more favorably than he was, in that the City allowed Mr. Grullon to keep an unlimited number of livestock animals of any species on Mr. Grullon's farm. Mr. Grullon's farm and Mohit's farm were classified as agricultural lands under the state's greenbelt law, were permitted for livestock operations under the same state regulation, and were about the same size.

## PROCEDURAL HISTORY

Since 2014, Mohit has sued the City and its officials in state and federal court over the regulation of his property, alleging that the ordinance violated multiple state statutes and state and federal constitutional provisions. Mohit lost these lawsuits.

In July 2018, Mohit sued the City for regulatory takings, substantive due process, and equal protection violations. *Mohit v. City*

*of Haines City*, 845 F. App'x 808, 810 (11th Cir. 2021).[2] The district court dismissed with prejudice the substantive due process and equal protection claims because Mohit insufficiently alleged a substantive due process violation and provided an equal protection comparator who was not similarly situated (Mr. Grullon). *Id.* The district court granted summary judgment to the City on the regulatory takings claims because Mohit did not show that the ordinance deprived his property of all economically beneficial uses. *Id.*

We affirmed. *Id.* at 812. We explained that the regulatory takings claims failed because Mohit "was permitted to engage in some agricultural activities, even if those activities were less extensive than he would have liked," so the ordinance did not deprive him of all economically beneficial uses of his property. *Id.* at 811. The substantive due process claims failed, we said, because Mohit did not show that the ordinance lacked a rational basis. *Id.* And the equal protection claims failed, we explained, because Mohit insufficiently alleged discriminatory animus. *Id.* at 812.

After the dismissal of the substantive due process and equal protection claims but before the summary judgment on the regulatory takings claims, Mohit filed this case against nine City officials in their individual capacities: Director Greenwood, Deputy Director Bennett, City Attorney Fred Reilly, City Manager Deric Feacher, Mayor Morris West, Vice Mayor Anne Huffman, and

---

[2] Mohit also brought a claim under the Fair Housing Act, *id.*, but that claim is not relevant to this appeal.

Commissioners Horace West, Jayne Hall, and Roy Tyler.  Mohit again alleged regulatory takings, substantive due process, and equal protection violations based on the City's ordinance and permit requirement.

The officials moved to dismiss, arguing that the complaint was a shotgun pleading containing only unsupported legal conclusions, that Mohit's prior lawsuits precluded him from bringing this case because the only difference here was that Mohit sued City officials instead of the City itself, that Mohit's claims were time-barred, and that the officials were entitled to qualified immunity, absolute legislative immunity, and statutory immunity and were improper defendants.

The district court granted the officials' motion and dismissed Mohit's amended complaint with prejudice because it failed to state a plausible claim for relief.[3]  The district court explained that the regulatory takings claims failed because Mohit argued only that

---

[3] Mohit does not argue that the district court abused its discretion in dismissing his amended complaint with prejudice instead of granting him leave to amend. *See Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (reviewing the decision not to allow a pleading amendment for an abuse of discretion).  Nor does Mohit give us any indication of how he would amend his complaint.  In any event, we discern no abuse of discretion here because Mohit was "given at least one chance to amend [his] complaint"—and, counting his prior related lawsuits, much more than one chance—"before the district court dismisse[d] the action with prejudice." *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991), *overruled as to counseled plaintiffs by Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 & n.1 (11th Cir. 2002) (en banc).

he was deprived of all economically beneficial uses of his property, and his allegations that he was allowed to maintain his hay crop and to keep twenty cows, twenty goats, and five horses showed that he was not so deprived. The substantive due process claims failed, the district court said, because Mohit's state-created property rights were not fundamental rights, the officials' enforcement of the ordinance against him was executive, and the ordinance had a rational basis and did not violate state law. The equal protection claims failed, the district court explained, because "[Mohit's] request for a conditional use permit was fully granted" and because the complaint "lack[ed] sufficient allegations to support an inference of discriminatory animus."

## STANDARD OF REVIEW

We review de novo a dismissal for failure to state a claim, "accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). The complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Section 1983 cases do not have a heightened pleading standard. *Hoefling v. City of Miami*, 811 F.3d 1271, 1276 (11th Cir. 2016).

## DISCUSSION

Mohit argues that in adopting and enforcing the ordinance against him, the officials committed regulatory takings, substantive due process, and equal protection violations.  We discuss these claims in turn.

### Regulatory Takings

Mohit contends that the officials "den[ied] him of all economically beneficial and productive use of his farm, making his property worthless."

"The Takings Clause of the Fifth Amendment, applicable to the States through the Fourteenth Amendment, prohibits the government from taking private property for public use without just compensation." *Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001) (citation omitted).  A government regulation may be "so onerous that it constitutes a taking" when it (1) "denies all economically beneficial or productive use of land" or (2) "impedes the use of property . . . based on a complex of factors, including . . . the economic impact of the regulation on the claimant; . . . the extent to which the regulation has interfered with distinct investment-backed expectations; and . . . the character of the governmental action." *Murr v. Wisconsin*, 137 S. Ct. 1933, 1942–43 (2017) (quotations omitted).  Mohit proceeds under the first theory only.

Mohit's own allegations establish that after the officials enforced the ordinance against him, his farm still had economically beneficial uses in the hay crop, twenty cows, twenty goats, and five

horses that he could keep on his property. Mohit complains that even though his permit application was approved in full, he "did not get what he wanted—to farm without restrictions or limitations." But property restrictions do not amount to takings unless they (1) "den[y] all economically beneficial or productive use of land" or (2) "impede[] the use of property . . . based on [the] complex of [regulatory takings] factors." *Id.* Because Mohit has not alleged that either circumstance applies, the district court did not err in dismissing his regulatory takings claims.

### Substantive Due Process

Mohit claims that because his property was classified as agricultural under state statute and because state law preempted the City from regulating agriculture, the officials violated his substantive due process rights when they adopted the ordinance and enforced it against him, requiring him to apply for permits to engage in various farming activities. The officials' adoption of the ordinance, he argues, was an arbitrary and irrational legislative act, in violation of substantive due process, because the ordinance conflicted with state statutes. Mohit also contends that the officials are not entitled to any type of immunity.

Substantive due process protects certain "fundamental" rights created by the Constitution, and it protects state-created, non-fundamental rights against arbitrary and irrational legislative acts. *Lewis v. Brown*, 409 F.3d 1271, 1272–73 (11th Cir. 2005). Local government officials sued in their individual capacities are entitled to absolute legislative immunity for their "actions taken in

connection with promulgating zoning ordinances and classifications." *Corn v. City of Lauderdale Lakes*, 997 F.2d 1369, 1392 (11th Cir. 1993); *see Brown v. Crawford County*, 960 F.2d 1002, 1012 & n.15 (11th Cir. 1992) (explaining that even "an unworthy purpose," like "conspiracy or bad faith," "does not preclude absolute immunity to legislators acting in their legislative capacity"). The immunity "inquiry is not bound by officials' titles and the characterizations officials place on their own activities. Instead, we examine the facts of each case to determine whether the [officials] . . . [were] engaging in legislative activity." *Bryant v. Jones*, 575 F.3d 1281, 1305 (11th Cir. 2009) (quotation omitted).

Mohit's substantive due process claims involve only state-created property rights, not fundamental rights, so Mohit cannot base the claims on the officials' enforcement of the ordinance against him. *See Lewis*, 409 F.3d at 1274 (explaining that plaintiffs cannot bring substantive due process claims when zoning enforcement infringes on state-created rights). Mohit asserts that the adoption of the ordinance—a legislative act—violated substantive due process. But because he sued the officials in their individual capacities for their participation in this legislative act, they are entitled to absolute legislative immunity. *See Corn*, 997 F.2d 1369, 1392 (11th Cir. 1993) (explaining that we have "extended absolute legislative immunity from suit under 42 U.S.C. [section] 1983 to purely local legislators in land use and zoning cases"); *see also Blackburn v. Shire U.S. Inc.*, 18 F.4th 1310, 1317 (11th Cir. 2021) ("We may affirm the district court on any basis supported by the record.").

Because Mohit must base his substantive due process claims on a legislative act and the officials are entitled to absolute immunity for their legislative acts, the district court did not err in dismissing Mohit's substantive due process claims.

### Equal Protection

Mohit, finally, contends that the officials "intentionally regulate[d] [his] existing and proposed state-regulated farm activities because: (1) he had challenged their alleged regulatory misconduct, (2) he refused to obey them when they threatened to shut his farm down and they wanted to drive him out of the city, but in defiance, he continued his hay crop operations, and (3) because of his minority race and foreign origin." And Mohit contends that the officials treated his property less favorably than Mr. Grullon's similarly situated farm and told Mohit to list only a few animals on his permit application "because of [Mohit's] minority race, dark skin color, and foreign origin."

"To establish an equal protection claim, a [plaintiff] must demonstrate that (1) he is similarly situated with other [persons] who received more favorable treatment," *Jones v. Ray*, 279 F.3d 944, 946–47 (11th Cir. 2001) (quotation omitted), and (2) the defendant "engaged in invidious discrimination against him based on race, . . . national origin, . . . or some other constitutionally protected interest," *Damiano v. Fla. Parole & Prob. Comm'n*, 785 F.2d 929, 932–33 (11th Cir. 1986).

Mohit does not plead facts to support that he was treated less favorably than Mr. Grullon or any other person. Mohit alleged that Deputy Director Bennett told him to "list only a few animals on [his permit] application to improve the chances for *a person like him* to get an approved permit," Mohit took this advice and applied for "only" twenty cows, twenty goats, and five horses, and the officials approved Mohit's application and permitted him the animals he requested. Mohit says that in contrast, the officials "approved a permit . . . for [Mr.] Grullon to keep an unlimited number of livestock animals . . . of any species on [Mr. Grullon's] farm."

We may reasonably infer that Mr. Grullon got what he asked for when the officials approved his permit application. The same is true for Mohit: he got what he asked for. The only possible difference is that Deputy Director Bennett advised Mohit not to ask for much. But Mohit does not claim that Mr. Grullon received any advice—let alone better advice—from any City official. And we will not speculate that Mr. Grullon did. *See Bilal v. Geo Care, LLC*, 981 F.3d 903, 911 (11th Cir. 2020) ("[W]e cannot act as de facto counsel [for a pro se plaintiff] or rewrite an otherwise deficient pleading to sustain an action.").

Because Mohit's allegations do not support that the officials treated a similarly situated person more favorably than they treated him, the district court did not err in dismissing the equal protection claims.

## CONCLUSION

Because the district court did not err in dismissing Mohit's regulatory takings, substantive due process, and equal protection claims, we affirm.

AFFIRMED.[4]

---

[4] Given the failures of Mohit's prior related lawsuits, the defendant officials moved to dismiss this appeal as frivolous and sought sanctions. Because our affirmance resolves this appeal, we deny the motion to dismiss as moot. And because we generally hesitate to impose sanctions on pro se appellants, *see Woods v. IRS*, 3 F.3d 403, 404 (11th Cir. 1993), we deny the motion for sanctions.